UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMMY JO FRITTS, | No. 2:14-CV-00123-LRS |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT,** *INTER ALIA* |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 12) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Tammy Jo Fritts, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on July 13, 2010, and for Title II Widow's Disability Insurance Benefits (DIB) on May 10, 2012. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing and a hearing was held on June 26, 2012, before Administrative Law Judge (ALJ) Caroline Siderius. Plaintiff, represented by counsel, testified at the hearing as did Thomas Polsin, a Vocational Expert (VE). On July 23, 2012, the ALJ issued a decision denying benefits. The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 50 years old. She has a high school education and no past relevant work experience. Plaintiff alleges disability since January 1, 1997.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 2**

proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred: 1) by failing to find that Plaintiff's left hand condition, depression and anxiety are severe impairments; 2) in disregarding the opinions of Plaintiff's providers and consultative examiners; 3) in assessing Plaintiff's physical and mental residual functional capacities; 4) in failing to pose a proper hypothetical to the VE; and 5) in assessing Plaintiff's credibility.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a

medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff met the non-disability

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

requirements for disabled widow's benefits in that she is the unmarried widow of a deceased worker who previously qualified for Social Security benefits and she had attained the age of 50 (20 C.F.R. §404.335); 2) Plaintiff has "severe" impairments which include chronic obstructive pulmonary disease (COPD); mild right carpal tunnel syndrome; somatoform disorder; personality disorder and drug and alcohol abuse; 3) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 4) Plaintiff has the residual functional capacity (RFC) to perform light exertional activity that does not require her to lift more than 20 pounds occasionally and 10 pounds frequently; does not require her to sit more than six hours a day and stand/walk more than six hours a day[1]; allows her to change positions once an hour; does not require more than occasional crawling, crouching, kneeling, stooping, climbing of ladders, ropes, scaffolds, stairs and ramps; does not subject her to concentrated exposure to dust, gases, fumes, hazards and unprotected heights; does not require more than occasional contact with the general public; and does not require more than frequent handling and manipulating with the right dominant hand; 5) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy, as identified by the VE, including garment inspector, small parts assembler, and photocopy machine operator. Accordingly, the ALJ concluded the Plaintiff is not disabled.

---

[1] "Light" work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. It requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 5**

**RESIDUAL FUNCTIONAL CAPACITY (RFC)**

    **A. Mental RFC**

Plaintiff contends there is no substantial evidence contrary to the opinion of Dr. Rosekrans.

Plaintiff was seen a number of times at Psychological Services of Spokane. In November 2006, Kathy Jamieson-Turner, MS, diagnosed the Plaintiff on Axis I with "Alcohol Dependence, Sustained Full Remission by Client Report," "Adjustment Disorder with Mixed Anxiety and Depressed Mood, Chronic," and on Axis II with "Personality Disorder NOS with Antisocial and Borderline Features." Ms. Jamieson-Turner assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60. (Tr. at p. 291). A GAF score between 51 and 60 indicates "moderate symptoms" or "moderate" difficulty in social, occupational, or school functioning. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34). Frank Rosekrans, Ph.D., a licensed psychologist, signed Shearer's report, adopting as his own "the accuracy, objectivity, validity, findings and conclusions" of the report, and "accept[ing] accountability for the contents." (Tr. at p. 292).

Consistent therewith, Ms. Jamieson-Turner completed a Washington Department of Social and Health Services (DSHS) "Psychological/Psychiatric Evaluation" in November 2006, indicating that Plaintiff was mildly limited in her ability to learn new tasks and perform new tasks, moderately limited in her ability to exercise judgment and make decisions, mildly limited in her ability to care for self, including personal hygiene and appearance, and moderately limited in her abilities to relate appropriately to co-workers and supervisors, to interact appropriately in public contacts, to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and to control physical or motor movements and maintain appropriate behavior. Dr. Rosekrans also signed this evaluation. (Tr. at pp. 293-96).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6**

In October 2007, Kevin Shearer, a Licensed Mental Health Counselor (LMHC), diagnosed the Plaintiff on Axis I with "Major Depressive Disorder, Recurrent, Moderate," "Anxiety Disorder NOS w/ features of social phobia," "Alcohol Abuse, Sustained Full Remission (Per Client Report)," and "Adjustment Disorder, Unspecified Type." Mr. Shearer assigned Plaintiff a GAF score of 60. (Tr. at p. 284). Among Mr. Shearer's recommendations were that Plaintiff be referred for job training and job placement assistance. (*Id*.). Dr. Rosekrans signed Shearer's report, adopting as his own "the accuracy, objectivity, validity, findings and conclusions" of the report, and "accept[ing] accountability for the contents." (*Id.*).

Consistent therewith, Mr. Shearer completed a DSHS evaluation in October 2007, indicating that Plaintiff was moderately limited in her abilities to exercise judgment and make decisions and to perform routine tasks, and moderately limited in her abilities to relate appropriately to co-workers and supervisors, to interact appropriately in public contacts, to respond appropriately to and tolerate the pressures and expectations of a normal work setting, to care for self, including personal hygiene and appearance, and to control physical or motor movements and maintain appropriate behavior. Dr. Rosekrans also signed this evaluation. (Tr. at pp. 285-87).

In April 2008, Mr. Shearer diagnosed the Plaintiff on Axis I with "Major Depressive Disorder, Recurrent, Mild," "Anxiety Disorder NOS w/ Features of Social Avoidance, Mild," "Alcohol Abuse, Sustained Full Remission (Per Client Report)," and "Adult Antisocial Behavior." He diagnosed her on Axis II with "Personality Disorder NOS (Mixed Personality Disorder with Borderline and Passive-Aggressive Features)." Mr. Shearer assigned Plaintiff a GAF score of 65. (Tr. at p. 273). A GAF score between 61 and 70 indicates "mild symptoms" or "some" difficulty in social, occupational, or school functioning, "but generally functioning pretty well" and "has some meaningful interpersonal relationships."

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

*American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34). Among Mr. Shearer's recommendations were that Plaintiff be referred for job training and job placement assistance, and be referred "to an occupational medicine physician for an evaluation of her work capabilities from a physical functioning basis, as she is insistent that she cannot work due to her physical complaints." (Tr. at p. 274). Dr. Rosekrans signed Shearer's report, adopting as his own "the accuracy, objectivity, validity, findings and conclusions" of the report, and "accept[ing] accountability for the contents." (*Id*.).

Largely consistent therewith, Mr. Shearer completed a DSHS evaluation in April 2008, indicating Plaintiff was moderately limited in her ability to exercise judgment and make decisions, moderately limited in her ability to relate appropriately to co-workers and supervisors and in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and mildly limited in her ability to control physical or motor movements and maintain appropriate behavior. Dr. Rosekrans also signed this evaluation. (Tr. at pp. 275-78).

In December 2008, Mr. Shearer repeated his diagnoses of April 2008, and continued to assign Plaintiff a GAF score of 65. He also reiterated his recommendations that Plaintiff be referred for job training and job assistance, and that she be referred to an occupational medicine physician for evaluation of her physical work capabilities because of her insistence that she was unable to work because of her physical complaints. (Tr. at pp. 323-24). Dr. Rosekrans signed this report, just like all the previous reports. In an accompanying DSHS evaluation, Mr. Shearer repeated the limitations he noted in his April 2008 evaluation. Just like all the previous evaluations, Dr. Rosekrans signed the January 2009 evaluation. (Tr. at pp. 325-28).

\\\

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 8**

In May 2009, Mr. Shearer repeated the diagnoses he made in April and December 2008, although this time, the depressive order was "NOS, Mild," and there was no indication that the alcohol abuse was "Sustained Full Remission (Per Client Report)." Mr. Shearer continued to assign the Plaintiff a GAF of 65 and continued to recommend referral for job training and job placement assistance, and referral to an occupational medicine physician, although this time he also recommended referral to a program for immediate treatment for alcohol abuse. Dr. Rosekrans signed off on this report. (Tr. at p. 312). An accompanying DSHS evaluation by Mr. Shearer repeated the same limitations set forth in the two previous DSHS evaluations completed by him. Dr. Rosekrans signed off on this evaluation. (Tr. at pp. 313-16).

In April 2010, Dr. Rosekrans completed a DSHS evaluation in which he diagnosed the Plaintiff on Axis I with "Major Depressive Disorder, Single Episode, Moderate Adult Antisocial Behavior," but with no diagnosis on Axis II. He assigned the Plaintiff a GAF of 55. (Tr. at p. 300). He indicated no limitations regarding Plaintiff's cognitive abilities, but indicated that concerning social factors, Plaintiff was markedly limited in her ability to relate appropriately to co-workers and supervisors, to respond appropriately and tolerate the pressures and expectations of a normal work setting, and to maintain appropriate behavior in a work setting. He further indicated that Plaintiff was moderately limited in her ability to tolerate the pressures and expectations of a normal work setting and in her ability to care for self, including personal hygiene and appearance. (Tr. at p. 301). He also, however, acknowledged the following:

> I have nothing on which to base my evaluation on except her self-report, 18 pages of medical records from Sacred Heart from 05.03.2009 to 6/3/2009, and previous evaluations. There are many inconsistencies in her reports from our evaluations for the past five years. It is clear, however, that she has not worked and is extremely unlikely to go back to work . . . . Although there seem to be some problems with her credibility, her life has had many problems and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 9**

|   |   |
|---|---|
| 1 | misfortunes, she has reason to be depressed, and reports depression.  I have diagnosed major |
| 2 | depressive disorder. |

3  (Tr. at p. 303).

4      In April 2011, Dr. Rosekrans completed another DSHS evaluation.  This
5  time he added a diagnosis of somatization disorder.  Although the form had
6  changed somewhat, the limitations noted by Dr. Rosekrans were largely consistent
7  with what he had indicated in his 2010 evaluation: marked limitations in her
8  abilities to be aware of normal hazards and take appropriate precautions,
9  communicate and perform effectively in a work setting with public contact,
10  communicate and perform effectively in a work setting with limited public contact,
11  and maintain appropriate behavior in a work setting.  (Tr. at pp. 413-14).
12  Furthermore, Dr. Rosekrans repeated verbatim the statements from the 2010
13  evaluation which are quoted above.  (Tr. at pp. 415-16).

14      Finally, in January 2012, Dr. Rosekrans completed a final DSHS evaluation
15  repeating the diagnoses of major depressive disorder and somatization disorder.
16  (Tr. at p. 620). His prognosis was as follows: "I do not believe that she will return
17  to any work.  She says that she has an SSI hearing next month, and expects to be
18  approved.  She has been having evaluations here since April 2006, **with no signs**
19  **of change or improvement**."  (Tr. at p. 621)(emphasis added).

20      What Dr. Rosekrans did not explain, however, is the reason for the
21  significant increase in the severity of the limitations in Plaintiff's social
22  functioning in 2010 and 2011 as compared to what had been reported over the
23  previous five years of evaluations.  The "marked" limitations in social functioning
24  reported by Dr. Rosekrans in 2010 and 2011 were contradicted by all of these
25  previous evaluations, prompting the ALJ to give little weight to those reported
26  limitations and Dr. Rosekrans's opinion that Plaintiff could not return to work.
27  The ALJ correctly pointed out that "[i]n his earlier evaluations [Dr. Rosekrans]
28  even noted inconsistencies in [Plaintiff's] reports and some problems with

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

credibility" and "also apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. at p. 42). Moreover, as recognized by the ALJ (*Id.*) and Dr. Rosekrans, and as discussed below, there are valid reasons to question Plaintiff's credibility regarding her subjective complaints.

The ALJ offered specific and legitimate reasons to reject Dr. Rosekrans's opinion regarding "marked" limitations and the Plaintiff's ability to return to work. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)  Those reasons are supported by substantial evidence as is the mental RFC found by the ALJ, that being no more than occasional contact with the general public.

Finally, although the ALJ did not find that Plaintiff suffers from "severe" depression and anxiety, notwithstanding the repeated diagnoses of the same by those at Psychological Service of Spokane, this is harmless error because the omission does not alter the mental RFC determined by the ALJ which, as noted, is supported by substantial evidence. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**B.  Physical RFC**

Plaintiff contends there is no substantial evidence contrary to the opinion of Dr. Margraf.

In December 2008, Robert Margraf, M.D., completed a DSHS "Physical Evaluation" form in which he indicated that Plaintiff's COPD and carpal tunnel syndrome were "moderate" impairments, significantly interfering with the ability to perform one or more basic work-related activities.  He indicated Plaintiff was limited to sedentary work activity.  (Tr. at p. 372).  He recommended the Plaintiff quit smoking and that carpal tunnel release surgery would improve her "employability." (Tr. at p. 373).  In June 2009, Dr. Margraf completed another

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 11**

DSHS evaluation, this time indicating that Plaintiff's COPD constituted a "moderate" impairment, but that her carpal tunnel syndrome was a "mild" impairment which would not significantly interfere with her ability to perform basic work-related activities. He now indicated the Plaintiff was limited to "light" work. (Tr. at p. 331). Dr. Margraf said he was awaiting EMG (electromyography) results to confirm the diagnosis of carpal tunnel and that smoking cessation and possible surgery, if necessary, for carpal tunnel syndrome would improve the Plaintiff's "employability." (Tr. at p. 332).

In May 2010, Dr. Margraf saw Plaintiff for a GAU[2] evaluation. As to Plaintiff's COPD, Dr. Margraf thought it "likely that she does not have an impairing severity of disease at this time." And as to Plaintiff's carpal tunnel syndrome, he suspected there was a "secondary gain issue" and was not willing to "assign disability based upon this complaint unless there is EMG data to support that there is in fact neuropathy." (Tr. at p. 352). Dr. Margraf wrote:

> I am concerned that there is strong motivation in the patient to not return to the work force. The above evaluation is indicated, but if there is not clear evidence of disability based upon the studies discussed above- from a medical perspective she should be returning to work. Apart from her acute ankle injury, I do not find her physical exam to suggest she truly is disabled.

(Tr. at p. 352).[3]

---

[2] General Assistance Unemployable (GAU) is a Washington state program that provides cash and medical benefits for persons who are physically and/or mentally incapacitated and unemployable for 90 days from the date of application. It is funded by DSHS.

[3] Dr. Margraf ordered an x-ray to rule out a distal fibula fracture, but suspected that even if there was an ankle fracture, this would result in no longer than six weeks of disability, and if it were merely a sprain, four to six weeks recovery would be necessary. (Tr. at p. 352).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 12**

1    In a DSHS evaluation which he completed in June 2010, Dr. Margraf rated
2    both Plaintiff's COPD and carpal tunnel syndrome as "mild" impairments, and
3    indicated Plaintiff had the exertional capacity for "medium" work (ability to lift 50
4    pounds maximum and frequently lift and/or carry up to 25 pounds).  (Tr. at p.
5    347).  Dr. Margraf wrote that "no gross medical disability [was] apparent," that
6    "job training, smoking cessation" would improve Plaintiff's "employability," and
7    indicated Plaintiff was "able to participate in pre-employment activities such as
8    job search or employment classes."  (*Id*.).
9    Based on the foregoing, the court concludes the ALJ's physical RFC
10   determination is not inconsistent with Dr. Margraf's assessments.  To the contrary,
11   it constitutes substantial evidence in support of the ALJ's physical RFC
12   determination.
13   Plaintiff had right carpal tunnel release surgery in May 2011.  (Tr. at p.
14   455).  In July 2011, her physical therapist reported that "[s]he has gained
15   significant relief from her symptoms of severe pain, especially in the middle of the
16   night and tingling and numbness in the right wrist and hand that extended
17   proximal to the right elbow and into the shoulder."  (Tr. at p. 456).  In September
18   2011, she was discharged from physical therapy due to lack of attendance:
19   "Tammy was seen for one visit on 08-04-11 and then has no showed for the past
20   three visits and now cancelled her last visit."  (Tr. at p. 460).  In October 2011,
21   Plaintiff returned to Alpine Orthopaedic and Spine PC where Miguel A. Schmitz,
22   M.D, noted as follows: "Ms. Fritts returns to the clinic indicating the right upper
23   extremity carpal tunnel release is doing quite well for her.  She has diminished
24   pain and numbness in her fingers and she is very happy with that.  The patient also
25   has lesser symptomatology in her thumb.  On the other hand, the patient has
26   developed pain about the radial aspect of her hand.  The patient has more pain in
27   this regard when she is utilizing her hand more and more."  (Tr. at p. 467).
28   \\\

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

1    Plaintiff underwent a left carpal tunnel release on October 31, 2011. (Tr. at
2  p. 472). On December 6, 2011, Dr. Schmitz wrote: "At this time she is doing very
3  well . . . She denies any symptoms of infection and she states that her left hand
4  symptoms are greatly diminished at this point." (Tr. at p. 474).
5    On January 18, 2012, Plaintiff underwent a right long finger DIP joint
6  arthrodesis and palmar mass excision. This surgery was performed by William
7  Page, M.D., of Orthopaedic Specialty Clinic of Spokane, PLLC. Subsequently,
8  Plaintiff underwent an Occupational Therapy Initial Evaluation. On January 30,
9  the therapist reported that Plaintiff's pain was "well-controlled," her wounds were
10 "healing nicely," and that he "did not anticipate any additional outpatient therapy
11 needs." (Tr. at p. 586). On May 24, 2014, Dr. Page performed a follow-up
12 examination of the Plaintiff. (Tr. at p. 615). The Plaintiff advised Dr. Page she
13 was still having pain, but it was diminishing, (Tr. at p. 616), the same as she
14 advised during previous examinations on February 13, 2012 (Tr. at p. 668), and
15 March 19, 2012 (Tr. at p. 670). According to Dr. Page:

> Healed long finger DIP joint arthrodesis. Persistent hyper-sensitivity over excisional biopsy site in the palm. I cannot explain this. The scar is nearly invisible with no mass. Tammy was adamant about a Norco prescription refill today. I told her we will not do this for her as we have filled her Rx far more than we normally do. However, she was relentless therefore; I gave her a prescription for 20 Norco 5/325. This will be the very last narcotic prescription . . . she receives from this office.

21 (Tr. at p. 616).
22    Nothing in the medical records relating to Plaintiff's hands is contrary to the
23 ALJ's determination that Plaintiff remains capable of frequent handling and
24 manipulating with the right dominant hand. Substantial evidence- more than a
25 scintilla, less than a preponderance- supports that determination, particularly so
26 because of the clear and convincing reasons the ALJ provided for discounting

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 14**

Plaintiff's credibility. *Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996).[4] These reasons are set forth in the ALJ's decision (Tr. at pp. 38-41), and include several items discussed above, including Dr. Margraf suspecting a secondary gain issue with regard to Plaintiff's carpal tunnel symptoms, as well as her failure to attend physical therapy following her right carpal tunnel release. The ALJ also noted that when Plaintiff first reported problems with her right middle finger in April 2011, she indicated it was due to being struck on that finger by her grandson (Tr. at p. 425), yet in her subsequent visits with Dr. Page and her occupational therapist, she indicated the injury occurred when she either struck her finger on the refrigerator while taking out a beer (Tr. at p. 590), or while she was reaching into the refrigerator to get out a six-pack of beer and caught the tip of her finger in the "carrier" (Tr. at p. 604).

It is true the ALJ did not find that Plaintiff had a "severe" impairment with regard to her left hand, but it was not error to do so in light of the medical record discussed above and the clear and convincing reasons given for discounting

---

[4] "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

Plaintiff's credibility.[5] Furthermore, at the administrative hearing, Plaintiff testified her left hand is better than her right hand, and noted her dominant hand is her right hand. (Tr. at pp. 65-66).

**VE HYPOTHETICAL**

Pursuant to hypothetical questioning by the ALJ based on his RFC determination which is supported by substantial evidence, the VE identified jobs existing in substantial numbers in the national economy which the Plaintiff is capable of performing. (Tr. at pp. 89-90). Accordingly, the ALJ properly concluded the Plaintiff is not disabled.

## CONCLUSION

Defendant's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 12) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

///
///
///
///

---

[5] A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

**ORDER GRANTING DEFENDANT'S  
MOTION FOR SUMMARY JUDGMENT- 16**

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this __13th__ of November, 2014.

s/Lonny R. Suko
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 17**